MONTANA MILLING COMPANY, APPELLANT. *v.* JEFFRIES, SHERIFF, RESPONDENT.

[Submitted July 17, 1893.  Decided February 26, 1894.]

ATTACHMENT—*Book accounts—Duty of sheriff to garnish.*—It is the duty of a sheriff who has levied an attachment upon a stock of goods, and has in his possession thereunder the books of account of the defendant, to garnish those who appear therein as debtors, without first receiving a written notice from the plaintiff or his attorney, as provided for in section 188 of the Code of Civil Procedure, since sections 184, 185, and 186 require a sheriff, when a writ of attachment is placed in his hands, to attach and safely keep all the property of the defendant, including debts.

*Appeal from First Judicial District, Lewis and Clarke County.*

ACTION for damages against a sheriff for failure to execute a writ of attachment. Tried before HUNT, J., on agreed case. Defendant had judgment below. Reversed.

*Edward C. Russel*, for Appellant.

The main points to be decided are: Was a written *præcipe* to respondent necessary, in strict compliance with section 188 of the Code of Civil Procedure, to secure the service of garnishments under appellant's writ of attachment? If no such *præcipe* was necessary, was respondent negligent in not levying said garnishment under appellant's, or a prior, writ? If such a *præcipe* were necessary, was respondent justified in levying under the so-called *præcipes* under which he acted? Appellant contends that no such *præcipe* is necessary, but that the respondent was commanded to garnish debtors by the writ and statute; that section 188 is supplemental and additional to section 186, and not contradictory to, or exclusive of, the fifth paragraph of said section 186. Section 186 is a clear and express command to serve garnishments, with directions how to do it. Section 188 is simply a repetition of the mode of procedure, and a direction to pursue it in case of notice given by the plaintiff. It is not inconsistent with, or contradictory to, the command of section 186, but supplemental. The writ of attachment (the ordinary printed form) reads: "Now, we do therefore command you, the said sheriff or constable, that you attach and safely keep all the property of the said defendant within your county, not exempt from execution, or so much thereof as may be sufficient to satisfy plaintiff's demand as above mentioned; unless," etc., and the statute, section 186, became a part of said writ, and made it include garnishments. The doctrine of "*Expressio unius est exclusio alterius*" applies only when its assistance is necessary to determine the intention of the legislature; or when that expressed is creative or in derogation of common law or other provisions of the statute. (Sutherland on Statutory Construction, § 325.) The maxim does not apply where the statute covers many cases, and some are mentioned without intention of excluding others. (Sutherland on Statutory Construction, § 329.) All statutes which can stand together relating to the same subject should be construed together and harmonized, if possible. (Sutherland on Statutory Construction, § 283; Sedgwick on Construction of Statutory Law, 209 et seq.) The legislature is presumed to

intend existing statutes, where they have not expressly abrogated them. Where no express repeal is needed none is deemed intended. (Sutherland on Statutory Construction, § 829.) The statutes of Missouri (§ 1264) provide for a general direction for garnishment and a special direction giving names of debtors, all in the writ of attachment, and this is practically the same as our statute (§§ 186-88.) This has been construed in *Pritchard* v. *Toole*, 53 Mo. 356, to intend that both directions shall be binding, and the officer shall exercise diligence in levying garnishments under the general direction, cited in 5 American and English Encyclopedia of Law, under garnishment, page 1121. Again, as attachment and garnishment are creatures of the statute, the service must be made in strict accordance with the statute, or the garnishee is not held; he pays at his peril; the rights of third parties are not barred, and the garnishee is again liable. (Drake on Attachment, § 451 *b*; *Haley* v. *Hannibal etc. R. R. Co.*, 80 Mo. 112; *Fletcher* v. *Wear*, 81 Mo. 524; *Gates* v. *Tusten*, 89 Mo. 13; *Connor* v. *Pope*, 18 Mo. App. 86; *Pratt* v. *Sanborn*, 63 N. H. 115.) The sheriff must execute the process diligently, and must answer to plaintiff in damages for negligence. (Crocker on Sheriffs, §§ 280, 287, 851, 852.) The sheriff is bound to make reasonable inquiry and search for property of defendant. (Crocker on Sheriffs, §§ 432, 851; Drake on Attachment, §§ 188, 190, 191, 191 *a; Fisher* v. *Gordon*, 8 Mo. 386; *Taylor* v. *Wimer*, 30 Mo. 126; *Bell* v. *Commonwealth*, 1 J. J. Marsh. 551.) The plaintiff is under no obligation to give the officer information. (Freeman on Executions, §§ 107, 252, and cases cited; Crocker on Sheriffs, § 851; *Hargrave* v. *Penrod*, Breese, 401; 12 Am. Dec. 203, and note; *Batte* v. *Chandler*, 53 Tex. 613.)

*Leslie & Craven*, for Respondent.

Respondent insists that sections 186 and 188 of the Compiled Statutes are to be construed together, and as one continued series of instructions to the sheriff, without regard to section 187, which gives instructions to the recorder. There is nothing in either section but prescribed duties and directions to the

sheriff as to what he shall do with the writ of attachment, and how and when he shall do it, in the various circumstances of each case. The construction of section 186, which is claimed by counsel for appellant, necessarily includes and embodies every particle of power, authority, and duty imposed and conferred upon the sheriff by section 188. And if such power and duty come to him by virtue of section 186, why and for what reason was section 188 enacted and set forth in the same chapter, in connection with the same subject matter, and in the same act of the legislature? But is the conclusion that the section is only a repetition tenable when tested by the principles of statutory construction? Sections 186 and 188 of the Compiled Statutes, with the exception of changes in the former in respect to the manner of attaching real estate, are sections 96 and 97 intact, passed at Bannock in 1864. Section 187, prescribing duties to the recorder, was afterwards enacted. And to arrive at the conclusion of the appellant in this cause we are asked to believe that the legislature in its first session adopted section 188 as a vain and cumbersome repetition, and has since carried it along through all the successive revisions, from that time to this, as so much worthless luggage. How much more consonant with every principle of statutory construction to conclude that subdivision 5 of section 186 specifies how debts, credits, and other personal property not capable of manual delivery may be attached, and that section 188 directs the sheriff when and under what information the duty is imposed upon him, to prepare and serve garnishments. Every clause and word of a statute is presumed to have been intended to have some force and effect. *A fortiori* the language of a statute is to be given such a construction as will give the act some force and effect. It is a cardinal principle that all statutes are to be so construed as to sustain, rather than to ignore, them; to give them operation if the language will permit, instead of treating them as meaningless. (Endlich on Interpretation of Statutes, §§ 265, and cases cited, 399.) A statute must be so construed as to give effect, if possible, to every portion of it, and without rejecting any part as surplusage or treating it as a repetition of a provision already made. (*Gates* v. *Salmon*, 35 Cal. 576; 95

Am. Dec. 139.)   There are abundant reasons in support of the justice of the theory that a sheriff need not garnish without special instructions from plaintiff.  Real and personal property usually afford some idea to the officer of their value.

The officer knows before he levies whether any thing can be realized from the property about to be taken.   But in the case of debts it is different.  How can an officer know from the fact that books of accounts show various amounts to be due from a hundred or more debtors of a failing firm, that garnishment of them all would result in sufficient money to even pay his costs?   Is he expected to accept the books as conclusive, and act upon the presumption that all debtors are good, and that there are no offsets, payments, or counterclaims?   Or is he to constitute himself a spy to find out all of these uncertainties, and then garnish if the coast is clear?

If the sheriff must make search and find out whom to garnish under the general mandate of the writ **alone**, as contended by plaintiff, how and why is it that he may act upon oral information received from third parties, while the information from plaintiff or his attorney must be in writing?   A strange construction surely that would compel the sheriff at his peril to inquire from, and act upon, the oral statement of A, B, and C, strangers to the suit, while the information from plaintiff or his attorney, in order to afford a basis for like action on the part of the sheriff, must be in writing.   The cases cited by appellant showing the necessity of due diligence, do not apply to statutes like ours.   The Missouri statute, as to writs of attachment, was not involved in the case of *Pritchard* v. *Toole*, 53 Mo. 356, cited by appellant.   The presumption of law is that the sheriff did his duty in this case.   Neglect of duty free from contributory negligence on the part of the plaintiff must appear, before the officer can be made liable.

The books were in the store, and with all the contents were taken into possession by the sheriff.   It does not appear as to whether he actually knew they were a part of the contents of the store, not being properly the subject of attachment, except for their actual value as so much bound paper, until his attention was called to them by subsequent creditors in their *præcipes*.   As to whether they were properly kept and posted,

so that he could have known their contents without extraordinary research does not appear. There is nothing in the agreed statement to show that the sheriff had any reason to know or believe there was any debt owing to the defendants.

*McConnell, Clayberg & Gunn,* also for Respondent.

PEMBERTON, C. J.—This is an action for damages, brought against the defendant for neglect and failure to execute a writ of attachment in his hands as sheriff of Lewis and Clarke county. The case was tried in the court below on an agreed statement of facts, which is as follows:

"1. That the Montana Milling Company was, at all the times hereinafter mentioned, and now is, a corporation organized under the laws of the state of Montana, doing business at Helena, in said county of Lewis and Clarke; that Charles M. Jeffries was, at all times hereinafter mentioned, and now is, the sheriff of said county of Lewis and Clarke.

"2. That on the fifteenth day of September, 1890, the Montana Milling Company commenced an action against Kuphal & Schumacher, and a writ of attachment was issued in said action, and placed in the hands of Charles M. Jeffries, sheriff, on the same day, and judgment against said defendants in favor of said plaintiff was thereafter rendered.

"3. Six other writs of attachment, in as many suits against the same defendants, were in the hands of said sheriff when he received that of the Montana Milling Company, and six or more writs, in as many more suits against the same defendants, were placed in the hands of said sheriff after that of the Montana Milling Company.

"4. In pursuance of the first and subsequent writs, including that of the Montana Milling Company, the store of defendants Kuphal & Schumacher, together with stock of goods and fixtures therein, was attached by said sheriff on said fifteenth day of September, 1890.

"5. The books of account of said defendants Kuphal & Schumacher were in the said store at the time of said levy, were taken possession of by said sheriff, no one having made a demand for them, but were never attached by said sheriff.

"6. No written *præcipe* or notice, as contemplated by section

188 of the Revised Statutes of Montana, for garnishing debtors of said defendants Kuphal & Schumacher, was given to said sheriff by the said Montana Milling Company, nor has any ever been given. Though the said Montana Milling Company did, at the time of bringing said suit, have reason to believe that certain parties were indebted to said Kuphal & Schumacher, yet it failed to give said sheriff a written notice containing the names of said parties so indebted and the amounts of said indebtedness.

"7. Said sheriff attached no moneys due said Kuphal & Schumacher by garnishment until the twenty-ninth day of September, 1890, and then, under writs of attachment issued in the suits, respectively, of *Geo. R. Newell & Co.* v. *Kuphal & Schumacher*, placed in his hands September 24, 1890, and *Franklin McVeagh & Co.* v. *Kuphal & Schumacher*, placed in his hands on the seventeenth day of September, 1890, a written *præcipe* for such garnishment having been filed with said sheriff in the case of Franklin McVeagh & Co., on or about the twenty-ninth day of September, 1890, and in the case of Geo. R. Newell & Co. on the first day of October, 1890. Copies of said *præcipes* are hereto attached, marked, respectively, 'Exhibit A' and 'Exhibit B,' and made a part hereof.

"8. That under the last-mentioned writs the sheriff collected the sum of nine hundred and fifty-nine dollars and twenty-seven cents, which he paid to said plaintiffs Geo. R. Newell & Co. and Franklin McVeagh & Co., under their writs of attachment, which were subsequent to that of the Montana Milling Company, which said sum was collected from debtors of said Kuphal & Schumacher, who appeared to be such debtors by the said books of account of said Kuphal & Schumacher in the hands of said sheriff as aforesaid.

"9. That, if said sum collected under said garnishments, and paid over to said subsequent attaching creditors, had been paid by said sheriff to the attaching creditors in the order of their priority, the said judgment of the Montana Milling Company would have been paid in full.

"10. That the said judgment of the Montana Milling Company is still unsatisfied, and there is no property in the sheriff's

hands, or under his control, of said Kuphal & Schumacher, to satisfy it."

The points of contention submitted to the court below were as follows: "The Montana Milling Company claims that Charles M. Jeffries, as sheriff, is liable to it for the amount of its said judgment against said Kuphal & Schumacher, by reason of his negligence in not levying, under its said writ of attachment, on the said credits of said Kuphal & Schumacher. Charles M. Jeffries, sheriff, claims that he is not so liable, for the reason that he was under no obligation to said Montana Milling Company to levy upon such credits under said writ, not having received any written *præcipe* or information in writing from said plaintiff or its attorney, as contemplated in section 188 of the Revised Statutes of Montana, page 74; that if there was any negligence it was on the part of said Montana Milling Company, and not said sheriff."

Upon this statement of facts, and these points of contention, the court rendered judgment in favor of the defendant. From this judgment this appeal is prosecuted.

From the contention of the parties, as shown above, it will readily be seen that the appellant contends that it was the duty of the respondent, as sheriff, to attach the debts owing to Kuphal & Schumacher, as shown by the books of account of that firm, taken possession of by him under the writs of attachment against said firm, without any written notice, while the respondent contends that he was not required to attach such debts, or garnish the debtors of said firm, without a written notice so to do.

The law of this state requires a sheriff, when a writ of attachment is placed in his hands, without delay to attach and safely keep all the property of the defendant, including debts, named in the writ, not exempt from execution, or so much thereof as may be sufficient to satisfy the plaintiff's demand. (Code Civ. Proc., §§ 184–86.) Subdivision 5 of said section 186 prescribes the manner of attaching debts and credits in the hands of persons owing such debts, or having in their possession such credits. Appellant contends that under these provisions of the statute it was the duty of the sheriff to attach the debts due the said firm of Kuphal & Schumacher in the

hands of the persons owing them, as shown by the books of account of said firm in the possession of the sheriff under the writ of attachment issued against said firm without written notice. The respondent contends that section 188 of the Code of Civil Procedure, which is as follows: "Upon receiving information in writing from the plaintiff or his attorney, that any person has in his possession, or under his control, any credits or other personal property belonging to the defendant, or is owing any debt to the defendant, the sheriff shall serve upon such person a copy of the writ, and a notice that such credits or other property or debts, as the case may be, are attached in pursuance of such writ"—controls and is decisive in this case. In other words, the respondent contends that a written notice under said section 188 was a *sine qua non* to the fixing of the liability of the sheriff for failing to garnish the debtors of said firm of Kuphal & Schumacher. Why was it necessary to give the respondent notice in writing to garnish any of the debtors of said firm? He had possession of the books of account of said firm under the writs of attachment in his hands. He had all the information necessary as to who were the debtors of said firm. The books of account of the attached firm gave him that information. It was his duty, under the law, to attach, without delay, all the property of the defendants in his county not exempt from execution, or so much thereof as would be sufficient to pay the demand of the plaintiff. The debts of the firm were as much property, and as much subject to attachment, as any other character of property. Then, why was it not as much his duty to attach the debts in the hands of the persons owing them, in the manner prescribed by law? If he failed to use due diligence in attaching property, or did not attach sufficient to satisfy the demand of plaintiff, he rendered himself liable to plaintiff for damages. (Drake on Attachment, §§ 188, 190, 191 *a*.) Nor was the plaintiff required to notify him in writing, or otherwise, as to whom he should garnish, or what property to attach. It was the duty of respondent to make reasonable effort to find sufficient property and effects of the defendant to satisfy the demands of the plaintiff. This he did not do. He could as well have garnished the debtors of said firm, under the writ

issued in the suit of plaintiff, without written notice, as he did under subsequent writs with written notice; for the written notice, in the subsequent attachments, to garnish debts, reads as follows:

"Geo. R. Newell & Co. v. Kuphal & Schumacher: To the sheriff: We understand that you have a list in your possession of the creditors of the above-named defendants. Since the plaintiffs in the above-named cause are probably the last on the list in the general attachment on the goods, will you please garnish a sufficient number of those indebted to the defendants who have not been garnished, in order to have enough secured by the writ to secure our demand." This notice did not designate any particular debtor or debtors. It simply called the sheriff's attention to the list of debtors of said firm contained in the books of account, and asked that they be garnished. This was merely calling his attention to information he already had, and to property which it was his duty to have attached under former writs. We do not think the plaintiff was required, under said section 188, to give the respondent written notice to garnish the debtors of the defendant firm, under the facts and circumstances of this case, or that such written notice was a prerequisite to the liability of the respondent. (See *Hargrave* v. *Penrod.* Breese, 401; 12 Am. Dec. 201, and authorities cited in note; Crocker on Sheriffs, § 851.) It was the duty of the sheriff to have attached the debts due said firm, as shown by the books of account of said firm in his possession, and to have paid out the proceeds or amounts so collected in the order of the priority of the writs of attachment in his hands; or, having garnished said debtors, and collected the amount owing said firm, if he had any doubt as to how he should proceed in paying out the same, he should have brought the money into court, and asked for an order as to the disposition thereof. In this manner he could have protected himself as well as this appellant.

The judgment of the court below is therefore reversed, and the cause remanded, with instructions to enter judgment in favor of the plaintiff.

*Reversed.*

HARWOOD, J., concurs.