IN THE SUPREME COURT OF THE STATE OF MONTANA

No. 92-174

STATE OF MONTANA EX REL., R. BUD )
GOULD, H. W. "SWEDE" HAMMOND, )
JERRY NOBLE, JOHN E. PHILLIPS, )
and BOB THOFT, )
)
    Petitioners and Relators, )
)
    v. )
)
MIKE COONEY, Secretary of State of )
the State of Montana; KIM HARRIS, )
Election Administrator and Clerk )
and Recorder of Lewis and Clark )
County, Montana, individually and )
as representative of the class of )
all election administrators and clerk )
and recorders of the State of Montana, )
and THE STATE OF MONTANA, )
)
    Respondents. )



FILED

MAY 6 - 1992

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

O P I N I O N

and

O R D E R

This is an application and petition for writ of injunction and declaratory judgment. Petitioners and relators are members of the Montana legislature and residents, registered voters, and taxpayers of Montana. They ask this Court for an injunction preventing defendants and respondents from allowing a referendum measure identified as House Bill 19 from appearing on the June 1992 election ballot. This is the proposition otherwise known as the "Treasure State Endowment." Petitioners and relators also ask for a declaratory judgment that House Bill 19 is an unconstitutional attempt by the legislature to refer to the people of Montana a

1

"bill" which has not been subject to the veto power of the Governor of Montana.

Responses to the application and petition have been filed by Kim Harris, Lewis and Clark County Treasurer/Clerk and Recorder, and by Mike Cooney, Secretary of State. Cooney, supported by Harris, moves to dismiss the action for failure to properly join and serve all necessary parties, failure to bring the action in a timely fashion, failure to present a case for which the Supreme Court should assume original jurisdiction, and failure to state a claim for which relief can be granted.

In filing this action, petitioners and relators named the Secretary of State and all of the election administrators throughout the state as respondents. However, instead of serving all of the county election administrators, they simply named Kim Harris as the representative of the class of election administrators throughout the state. Respondents argue that this case does not meet the Rule 23(a), M.R.Civ.P., requirement for a class action that the members of the class are so numerous that joinder of all members is impracticable.

Because we conclude, as described more fully below, that it is necessary for this Court to assume original jurisdiction in this matter and that the petition for an injunction should be denied, we shall proceed to the merits of this matter. We make no ruling as to the method of service of process used in this case.

2

In order to assume original jurisdiction, this Court has stated that three elements must be met. These are 1) that constitutional issues of major statewide importance are involved; 2) that the case involves pure legal questions of statutory and constitutional construction; and 3) that urgency and emergency factors exist making the normal appeal process inadequate. State ex rel. Greely v. Water Court of State (1984), 214 Mont. 143, 691 P.2d 833; Butte-Silver Bow Local Government v. State (1989), 235 Mont. 398, 768 P.2d 327.

The ultimate issues in this case are constitutional issues of major statewide importance which can be resolved on a purely legal basis of statutory and constitutional construction. Delaying a final ruling on the application and petition would leave unanswered the question of whether the referendum measure identified as House Bill 19 will appear on the rapidly approaching June 2 primary ballot in Montana. Therefore, and in the interests of judicial economy, we accept original jurisdiction in this matter.

Petitioners and relators assert that Article VI, Section 10, of the Montana Constitution requires the governor to sign legislation authorizing the submission of a legislative referendum to the vote of the people. They suggest that the term "referendum" as used in Article VI, Section 10, does not include a legislative referendum.

3

In resolving disputes of constitutional construction, this Court applies the rules of statutory construction. Under these rules, the intent of the framers of the Constitution is controlling and must first be determined from the plain language of the words used. Butte-Silver Bow, 768 P.2d at 330.

Article VI, Section 10, of the Montana Constitution provides:

> **Veto power.** (1) Each bill passed by the legislature, except bills proposing amendments to the Montana constitution, bills ratifying proposed amendments to the United States constitution, resolutions, and initiative and <u>referendum measures</u> shall be submitted to the governor for his signature. [Emphasis added.]

Article III, Section 5, of the Montana Constitution provides that:

> [a] referendum shall be held either upon <u>order by the legislature</u> or upon petition signed by at least five percent of the qualified electors in each of at least one-third of the legislative representative districts. [Emphasis added.]

We conclude that "referendum measures" as used in the Montana Constitution means both legislative referendum and initiative referendum. The plain language of these sections of the Montana Constitution makes it clear that legislation calling for a referendum measure is not required to be signed by the governor.

Petitioners and relators also claim that the referendum measure identified as House Bill 19 is an appropriations measure and, therefore, under Article III, Section 5, of the Montana Constitution, cannot be submitted to the people as a ballot issue. However, as described in the Attorney General's ballot statement

4

fiscal note, the "measure redirects coal severance tax from the permanent trust to a treasure state endowment trust." On its face, this measure is not an appropriation of money.

Section 13-27-310(2), MCA, provides that:

> The secretary of state shall transmit a copy of an act referred to the people or a constitutional amendment proposed by the legislature and a copy of the form in which the issue will appear on the ballot to the attorney general no later than 6 months before the election at which the issue will be voted on by the people.

Petitioners and relators argue that, because House Bill 19 was passed by the legislature less than six months before the special election at which the legislature ordered it be placed on the ballot, and was therefore necessarily submitted to the Attorney General less than six months before the election, the measure must be removed from the ballot as violative of § 13-27-310(2), MCA.

However, § 1-2-102, MCA, provides that:

> [i]n the construction of a statute, the intention of the legislature is to be pursued if possible. When a general and particular provision are inconsistent, the latter is paramount to the former, so a particular intent will control a general one that is inconsistent with it.

House Bill 19 specifically directs the Secretary of State to place this referendum on a special election ballot held at the same time as the June 1992 primary election. As discussed above, the legislature possesses authority to do so, under Article III, Section 5, of the Montana Constitution. Petitioners and relators have not alleged that any procedural steps have been disregarded as

5

a result of the shortened time between submission of this measure to the Attorney General and the June 1992 election. Further, the time element did not prevent petitioners and relators from delaying their application to this Court for nearly three months after House Bill 19 was delivered to the Secretary of State. We conclude that the statement of particular intent in House Bill 19 that this measure appear on the June 1992 ballot controls over the statement of general intent set forth at § 13-27-310(2), MCA.

IT IS ORDERED that the application for an injunction is DENIED.

DATED this 6th day of May, 1992.

_____
Chief Justice

_____

_____

_____

_____
Justices

6

Justice Karla M. Gray specially concurring:

I concur in the practical effect of the majority order and opinion. Under these circumstances, I would have dismissed the application and petition as untimely.

_____
Justices

Justice William E. Hunt, Sr., did not participate.

7